MISSOURI PACIFIC RAILROAD COMPANY, THOMPSON, TRUSTEE, *v.* ZOLLIECOFFER.

4-7776                                            191 S. W. 2d 587

Opinion delivered January 7, 1946.

560

*Henry Donham* and *Leffel Gentry,* for appellant.

*Tom W. Campbell* and *Pace, Davis & Pace,* for appellee.

GRIFFIN SMITH, Chief Justice. Missouri Pacific has appealed from a judgment in favor of E. J. Zolliecoffer for $15,000. Suit was brought under authority of Federal Employers' Liability Act.

Appellant insists (a) that there should have been a directed verdict for the defendant; (b) that George Henry's testimony was erroneously admitted; (c) that the 1936 complaint filed in Zolliecoffer's behalf in a personal injury suit should have been admitted—inasmuch as he then procured judgment for $8,000 to compensate a leg injury;—and, (d) $15,000 is excessive because the jury did not diminish damages in proportion to the plaintiff's contributory negligence. Other grounds were set out in the motion for a new trial, but are not argued.

Zolliecoffer, a resident of Alix, and a former coal miner, went to the City of Van Buren May 2, 1944, and applied to the railroad company for employment as brakeman. Thereafter he made "student" trips to ascertain what his duties were and how they should be performed. May 7th he was directed to Little Rock for assignment. The Company's records show that he responded May 8th and claimed to be ill. He reported for duty May 15th and made certain runs. In returning from Van Buren May 20th, Zolliecoffer reached the tracked area near what is called the viaduct adjoining Locust Street in North Little Rock where two mainlines and

four side- or "hold" tracks form part of the terminal facilities. Numerous switches are required in routing traffic. Because of the frequent use of this property the Company maintains groups of employes to look after it. Workmen were required to take out old ties and put in new ones, assist carmen in clearing derailments, help in loading and unloading track materials, pick up scraps of machinery, remove cinders from roadbeds and contiguous places, and perform other duties.

During May, 1944, slightly more than seventeen hundred man-hours were thus employed, ranging from a low of eight hours May 21, 28, and 30, to a high of 85 May 13 —the average being approximately fifty-four and three-quarters. It is not denied that appellee's duties required him to alight from the train while it was slowly moving.

Appellee's testimony is that about 5:30 the afternoon of May 20th he stepped from the caboose for the purpose of "taking care of the northbound switch," and in doing so stumbled in heavy cinders, clinkers, or firebrick fragments and sustained injuries to both legs. Another trainman testified that while he did not see Zolliecoffer fall, he saw him lying on the ground.

(a) The first question relates to the Company's duty in respect of the premises. There was testimony that Missouri Pacific has 180 miles of tracks in Greater Little Rock. No law imposes upon the Company the obligation to keep this vast area free of cinders, clinkers, firebrick, or scrap iron, to such an extent that an employe may, with complete safety, leave a moving train. What *is,* or what is *not,* appropriate care at a particular place and in stated circumstances, depends upon what the individual may reasonably expect and rely upon. In the case at bar appellee contends he had a right to assume that the impeding substances would not be strewn in such manner as to create a physical hazard. This measure of care, as applied to the premises where injury occurred, is strengthened by appellant's witnesses, several of whom testified that they were directed to watch for foreign matters and to remove them promptly. There

was also evidence from which the jury could draw the inference that the clinkers had been on the ground several hours. But, irrespective of extraordinary lapse of time between deposit and accident, the physical matter was seemingly left by a locomotive, and the act of negligence (if we assume, as the Company undertook to prove, that cleaning crews were at work) was not that of a stranger. In this respect the case is unlike *Missouri Pacific Railroad Company* v. *Ford,* 203 Ark. 212, 156 S. W. 2d 207, where there was no suggestion that the stick which caused Ford to fall had been left on the railroad platform by Company servants. See *Kroger Grocery & Baking Co.* v. *Kennedy,* 199 Ark. 914, 136 S. W. 2d 470, where it was said that the plaintiff must show *either* that the object was negligently left by an employe, or that it remained there a sufficient length of time to charge the master with knowledge of its presence. (Compare *The Scott-Burr Stores Corporation* v. *Foster,* 197 Ark. 232, 122 S. W. 2d 165, cited by appellant).

.(b) While ordinarily a witness will not be permitted to testify regarding previous condition of premises—whether they were clean or obstructed—unless it be shown that no material changes occurred after the accident happened and before the witness made his observations—in the instant case Henry was with Zolliecoffer within an hour of the time the latter claims he was injured, and the two went to where the fall was caused. No effort was made to show, other than by speculation, that the debris was left by an engine operating over the tracks after Zolliecoffer's misfortune occurred. It is only suggested that there *might* have been intervening activity—not that there *was.* In the circumstances we think the objection was properly overruled.

(c) Appellant insists it was prejudiced through refusal of the trial court to admit in evidence a certified copy of a complaint filed in Ozark Circuit Court in 1936, in consequence of which judgment in Zolliecoffer's favor was for $8,000. Of this sum he says he received $2,700 in compromise. The action was against Valley Gas Company. Zolliecoffer charged that he fell and broke a leg

because an iron pipe had been negligently misplaced. In the complaint there was the broad allegation that "bones, flesh, muscles, tendons, ligaments, and nerves in and about plaintiff's left leg, ankle, foot and knee were broken, split, fractured, lacerated, injured, . . ." etc. Physicians called by each side testified that at the present time appellee is injured in both knees, but the left is more seriously impaired. One surgeon, however, testified that in his opinion the injuries now complained of could not relate back to the 1936 transaction; the trauma was of comparatively recent origin. There is also substantial testimony going to the proposition that the damage is permanent. Walking is difficult and unsafe; a fall may be expected at any time.

Appellant comments on what this Court said in *Taylor* v. *Evans,* 102 Ark. 640, 145 S. W. 564. Argument is that the decision was erroneous and that it was not supported by the cases cited: *Gibson* v. *Herriott,* 55 Ark. 85, 17 S. W. 589, 29 Am. St. Rep. 17, and *Valley Planting Company* v. *Wise,* 93 Ark. 1, 123 S. W. 768, 26 L. R. A., N. S. 403. Chief Justice McCULLOCH, who wrote the Taylor-Evans opinion, and other members of the Court (with the exception of Mr. Justice KIRBY who dissented) no doubt thought that the law had been correctly declared, and we adhere to the decision. The Gibson-Herriott, and the Valley Planting Co.-Wise, cases were mentioned in support of the Court's holding that "It was competent, for the purpose of proving an admission on the part of the plaintiff, and also for the purpose of impeaching him, to read the complaint in evidence, or to prove by him, on cross-examination, that he had made allegations in the original complaint inconsistent with his present contention."

In the suit at bar Zolliecoffer was interrogated respecting his former allegations, his injuries, and their duration. He had neither signed nor verified the complaint; and he testified that the specific allegations were entirely those of his attorneys. He had only told them he sustained an injured leg—"a broken leg," as he other-

wise expressed it—and he insisted there was no thought on his part of claiming permanent injury.

The rule stated in American Jurisprudence, v. 20, Sec. 634, p. 537, is that while allegations affecting the same subject-matter may be introduced for the purpose of testing credibility, yet, in a court proceeding, a party who does not verify, authorize, or adopt a pleading, may not have the allegations thereof admitted against him, even though he makes use of the record in a subsequent proceeding. See *Griffin Grocery Co.* v. *Thaxton,* 178 Ark. 736, 11 S. W. 2d 473; *Berry* v. *French,* 200 Ark. 401, 139 S. W. 2d 381.

On rebuttal Zolliecoffer introduced witnesses who testified that they had worked with him in coal mines under extremely difficult conditions for protracted periods since 1936, and that he was not impaired by reason of the leg injury.

(d) Finally, it is argued that the judgment is excessive because the jury did not consider appellee's contributory negligence. There are at least two answers: First, it is not shown that, as a matter of law, Zolliecoffer was negligent. He assumed (and the Company in effect through its witnesses testified) that the general policy was to keep the grounds clean and free from dangerous substances in the area involved. A second answer is that the fact-finders were instructed not to return a verdict for the plaintiff "unless you find from a preponderance of the evidence that Zolliecoffer was not guilty of contributory negligence."

Affirmed.